UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
WISCONSIN – MILWAUKEE DIVISION

DR. VELTON C. WHITE

                    Plaintiff,

v.                                                                       case no. 07 cv 0892
                                                                       Hon. J P Stadtmueller

MICHAEL C. MARSHALL,
SUPERSPRING ORTHODONTICS, LLC,
and SPEEDALIGNERS, LLC

                    Defendants.

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

      Plaintiffs' motion to dismiss for failure to state a claim avers that application of the economic loss doctrine should bar tort claims in this case. This assertion extends Wisconsin law beyond recorded precedent, and for that reason the motion should be denied. Plaintiff's motion to dismiss breach of contract and breach of warranty counterclaims should be dismissed because this is a notice pleading jurisdiction and the claims provided sufficient notice of the claims to survive a motion to dismiss pursuant to Rule 12(b)(6).

## ARGUMENT

**(i) Rule 12(b)(6) Standard**

      A motion to dismiss under Rule 12(b)(6) raises the question of whether a complaint states a claim upon which relief may be granted. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A complaint or portion thereof may be dismissed for failure to state a claim "only if it is clear that no relief could

be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even accepting all of the alleged facts, the plaintiff has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). In reviewing a complaint under this standard, the court must accept as true the plaintiff's allegations, *Hosp. Bldg. Co. v. Tr. of Rex Hosp.*, 425 U.S. 738, 740 (1976), and construe the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor*, Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). If the parties refer to matters outside the pleadings in support of or opposition to a motion to dismiss under Rule 12(b)(6), the motion must be converted into one for summary judgment. Fed. R. Civ. P. 12(b). However, without converting a motion to dismiss to one for summary judgment, a court may consider documents attached to the complaint as well as documents that are not attached to the complaint but attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiff's claim. See Fed. R. Civ. P. 10(b); *188 LLC v. Trinity Indus., Inc*., 300 F.3d 730, 735 (7th Cir. 2002).

**(ii) The Economic Loss Doctrine (ELD) does not bar counterclaims for fraudulent inducement and intentional misrepresentation because the contract involved a settlement of a federal court action and a state court action, not a consumer transaction, was not a contract between sophisticated commercial parties, and because the misrepresentation did not pertain to the character and quality of goods as the subject matter of the contract, since the agreement involved litigation claims and intellectual property rights.**

Wisconsin law governs this question. The economic loss doctrine bars a party to a contract from recovering in tort for economic losses arising out of a breach of the contract. *Tietsworth v. Harley-Davidson, Inc*., 270 Wis. 2d 146, 162 (2004). More

specifically, the doctrine precludes a purchaser of goods from bringing a fraud claim alleging that the quality of the goods purchased was lower than expected. Id. Thus, misrepresentations that concern the quality of the product sold must be remedied through claims for breach of warranty. Id. at 165.

In *Tietsworth*, the plaintiff purchased a motorcycle from the defendant and claimed among other things that the defendant misrepresented its quality because it knew that the motorcycle and others with Twin Cam 88 engines were defective. Id. at 162. The Wisconsin Supreme Court held that the economic loss doctrine barred the plaintiff from pursuing the misrepresentation claim both because the doctrine applied to consumer transactions, Id. at 63, and because the claim pertained "to the character and quality of the goods that are the subject matter of the contract." Id. at 167.

In the present case, Counterclaimants claims that White fraudulently induced assent when White represented that:

- White was the sole owner of rights and claims relinquished by the agreement;
- White had not transferred such rights and claims;
- to White's knowledge both patents were valid and that White and his agents and attorneys were not aware of any act or omission that would render either patent unenforceable; and
- White had "authority to execute the agreement; that no promise, inducement or assignment not herein expressed has been made to White to secure his execution of this Settlement Agreement" (The agreement contained no written assignment of the rights of copyright co-claimant Donna White.) ¶¶ 9, 12 Settlement Agreement. Document 3-9.

Unlike the claim in *Tietsworth*, counterclaimants' allegations of misrepresentation relate not to the character and quality of some product that is the subject matter of a contract, but to the ownership, validity, enforceability, transference of intellectual property and to the right to release litigation claims in federal and state actions.

Wisconsin courts have extended the ELD and referred to it more broadly as

"Preclud[ing] contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship. *Van Lare v. Vogt, Inc.* 2004 WI 110, ¶ 19, 274 Wis.2d 631, 683 N.W.2d 46 (quoting *Tietsworth*, 270 Wis.2d 146, ¶ 23). The loss of a property right is distinguishable from the purely economic or commercial losses regarding goods. For the purpose of the ELD Wisconsin has defined "economic loss." Economic loss refers to "damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was manufactured and sold." *Daanen and Jansen v. Cedarapids Inc.,* 216 Wis.2d 395, 401-402, 573 N.W.2d 842 (1998); accord, e.g., *Ins. Co. of North Amer. v. Cease Electric*, 276 Wis. 2d 361 ¶ 23. "Economic loss" does not include personal injury or damage to other property. *Daanen*, 216 Wis. 2d at 402.

The misrepresentations at issue in the present case do no apply to the character and quality of goods that are the subject matter of the contract. Rather, the closer analog would be a misrepresentation extraneous – even if related in some tangential manner - to the contract. Wisconsin has held that misrepresentation and fraudulent inducement claims of such a nature are not barred by the economic loss doctrine.

In *Kaloti Enters., Inc. v. Kellogg Sales Co.,* 283 Wis. 2d 555, 585 (2005), the Wisconsin Supreme Court stated that the economic loss doctrine did not bar fraud in the inducement claims if the plaintiff satisfied several requirements including showing that the fraud was extraneous to rather than interwoven with the contract, i.e., that it did not relate to the quality of the goods that were the subject of the contract. In *Kaloti*, Kellogg and Kellogg's agent failed to disclose to Kaloti a change in Kellogg's mode of marketing that closed Kaloti's market for reselling Kellogg's products as a secondary supplier;

namely, that Kellogg would sell directly into the territory. Kaloti had relied on the continued arrangement to be the secondary supplier for the area when he placed his order for Kellogg's goods. Applying the holding of *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 24, 288 N.W.2d 95 (1980), the court held that Kellogg and their agent had a duty to disclose such a material fact as the new marketing plan. Kaloti was induced to buy $124,000.00 worth of Rice Krispie treats and Nutrigrain bars by Kellogg's failure to disclose a fact that the court held it had a duty to disclose. The failure to disclose was deemed to be a misrepresentation extraneous to the contract for goods and not barred as a tort claim by the ELD. Goods were involved, but misrepresentations as to marketing - while germane to the sale of the goods - were held to be not interwoven terms of the contract. *Kaloti,* 285 Wis.2d at 585.

      In *Kaloti,* Wisconsin adopted the reasoning of the Michigan Appeals Court opinion, *Huron Tool & Engineering Co. v. Precision Consulting Services,* 209 Mich. App. 365, 532 N.W. 2d 541 (1995), where the Michigan court held that the economic loss doctrine "encourages parties to negotiate economic risks through warranty provisions…[and] shield[s] a defendant from all economic consequences of a negligent act, thus keeping the risk of liability reasonably calculable." Id at 545. But, as in *Huron Tool*, the *Kaloti* decision preserved a narrow exception to the application of the ELD to bar tort claims for fraud in the inducement. In *Huron Tool* the rationale for the exception was set forth. "Fraud in the inducement presents a special situation where parties to a contract appear to negotiate feely – which normally would constitute grounds for invoking the ELD – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." Id.

In the present case, the alleged fraud is not interwoven with the contract because it relates not to the quality of any goods but to intellectual property rights and to releases from litigation in two jurisdictions. In *Kaloti*, secondary supplier Kaloti did not know of Kellogg's marketing adjustment and was therefore unable to allocate or insure against such a risk as he placed a large order. Counterclaimants in this case, similarly, did not know and could not have learned the false nature of certain warranties and representations made by White. Inspection of the information on the copyright office website would not have helped them know that White owned copyright registrations not identified in the First Federal Action that Superspring parties could still be accused of infringing even after executing the settlement agreement and release. White knew the false nature of his assertions, however, and did not disclose facts that would be material to any reasonable party considering a release on the terms proposed, as required under *Ollerman*. Under Wisconsin precedent, White can not invoke the ELD to bar tort claims.

White calls our attention to *Taurus IP v. DaimlerChrysler*, 519 F. Supp. 2d 905 (W.D. Wis. 2007) for "an application of the ELD remarkably parallel to this case." *Taurus IP* is a federal case, and federal cases applying Wisconsin law provide persuasive, but not precedential, authority. See *Daanen and Jansen v. Cedarapids Inc.*, 216 Wis.2d 395, 400, 573 N.W.2d 842 (1998) ("This court is not bound by a federal court's interpretation of Wisconsin law.")

*Taurus IP* involved a non-manufacturing entity with various alter egos. One of many Taurus IP-related companies owned or controlled by an individual named Erich Spangenberg, Orion IP, sued DaimlerChrysler Corporation (DCC) in Texas for infringement of some patents for internet sales of vehicles. During settlement

negotiations of the Orion-DCC case, DCC negotiated a settlement that included a license authorizing DCC to use certain internet interactive sales patents which DCC understood to be controlled by Orion IP. During the settlement negotiations, the term "related companies" was discussed and defined. In the final settlement, too, the term "related companies" (as well as other key terms raised in the fraudulent inducement claim) was defined by the parties. Thus, when the court assessed whether "related companies" was an interwoven term, it had no trouble finding that it was. The court applied the ELD to bar claims of fraudulent inducement raised by DCC against the managing member of certain non-practicing entity Taurus IP for the member's alleged misrepresentation as to the scope of license and release provisions of the licensing agreement, since the alleged misrepresentations were interwoven with the contract; the contract anticipated that Orion IP may have various "related entities." The transfer of a patent not included in the first lawsuit but which nevertheless covered activity similar to what started the infringement dispute between Orion IP and DCC ultimately put a certain ('658) patent in Taurus IP's possession and created the possibility that DCC might be sued again. With celerity, Taurus IP (the new owner of the '658) did sue DCC, in the W.D. of Wisconsin, for infringement of the '658 patent for internet sales activities very similar to those that infringed certain other patents of Orion IP in the first action.

  Counterclaimants distinguish the facts of *Taurus IP* from the facts before this court. First, DCC was, when the case was decided, a huge manufacturer (and finance company). Taurus IP, Orion IP and the related non-practicing entities (NPE's or, colloquially, patent troll companies) owned in whole or in part by Erich Spangenberg reputedly made an estimated $72 million in the first three quarters of 2007. *Taurus IP*

involved entities with vastly more sophisticated means of performing due diligence than the parties in the present case.

The economic loss doctrine "bars tort recovery for economic loss suffered by commercial entities," *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.,* 225 Wis.2d 305, 311, 592 N.W.2d 201, 204 (1999), and requires sophisticated commercial parties to "pursue only their contractual remedies when asserting an economic loss claim." *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 34, 262 Wis.2d 32, 662 N.W.2d 652. The doctrine strives to protect the freedom of parties to allocate economic risk by contract, *Kaloti,* 283 Wis.2d at 555, preserve the distinction between contract law and tort law, *Daanen,* 216 Wis.2d at 403, and encourage the party in the best position to assess risk, the buyer, to "assume, allocate or insure against [that] risk." *Id.* at 410. Because the parties were not sophisticated commercial entities who might be expected to do extensive diligence and meet the transactional cost burden of a contract that mitigates to zero the risk of fraud, the ELD should not bar fraudulent inducement and misrepresentation claims.

Apart from policy reasons relating to transactional burdens, the ELD should not be applied to bar the tort claims because Wisconsin law recognizes an exception to the economic loss doctrine for intentional misrepresentation claims that allege fraud in the inducement. *Kailin v. Armstrong,* 2002 WI App 70, ¶¶ 28-30, 252 Wis.2d 676, 643 N.W.2d 132. This exception is consistent with the policy behind the economic loss doctrine insofar as "one party's ability to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent conduct." *Id.* at ¶ 28, 643 N.W.2d 132 (citing *Douglas-Hanson Co., Inc. v. BF Goodrich Co.,* 229 Wis.2d 132, 144-45, 598

N.W.2d 262 (Ct.App.1999)). In *Taurus IP*, due diligence was possible, definitions were negotiated, and due diligence was conducted on such key terms as "related companies" that were critical to the fraud claims, and the negotiation made the terms interwoven. Since the terms were interwoven, the ELD barred tort claims of fraud.

Thus, while goods were not involved in *Taurus IP*, the terms germane to the alleged fraudulent inducement of the settlement agreement and license were interwoven because they were the subject of negotiation and anticipated by the contracting parties. In the Superspring settlement, individuals and small entities sought representations as to key facts not readily determinable, White's misrepresentations were made to induce assent from counterclaimants, without negotiation as to the language and definition of the terms or any other indication of anticipation, but with terms that bear connotations that a reasonable party would deem unequivocal as to ownership, transfer, validity, and enforceability of intellectual property. Thus the misrepresentations were extraneous to the agreement and, applying the narrow exception rule set forth in *Kaloti,* the tort claims should not be barred by the ELD.

**(iii) If the court should find that the misrepresentation and fraudulent inducement claims are barred as tort claims, the court should not dismiss the claims, but should consider in the alternative remedies afforded by contract law for misrepresentation.**

In their pleading, counterclaimants prayed for such other and further relief as justice requires. If the misrepresentation and fraudulent inducement claims are barred in tort, they should be addressed as misrepresentations in contract; they should not be dismissed. In contract, a misrepresentation is an assertion not in accord with the facts. Restatement (Second) of Contracts §159. The Restatement at §162 defines when a misrepresentation is fraudulent or material:

> (1) A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and the maker:
> - (a) knows or believes that the assertion is not in accord with the facts, or
> - (b) does not have the confidence that he states or implies in the truth of the assertion, or
> - (c) knows that he does not have the basis that he states or implies for the assertion.
>
> (2) A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so. Restatement (Second) of Contracts §162.

If a party's assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient. Restatement (Second) of Contracts §164(1). The Restatement defines when a misrepresentation is an inducing cause. A misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent. Restatement (Second) of Contracts §167.

By the court's determination that the contract remedy of rescission is proper in light of misrepresentations that induced the agreement, the intervening license theory posited by the plaintiff to create a statutory damages argument in this case would be without merit because - to the extent that there ever was copyright infringement - the late registration of the works would create a bar to recovery of statutory damages under 17 USC §412. The counterclaim should survive a Rule 12(b)(6) motion because the court may take judicial notice of all facts regarding registered copyrights and US patents and may consider documents attached to the complaint as well as documents that are not attached to the complaint but attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiff's claim. See Fed. R. Civ. P. 10(b). The notice pleading standard has been met.

**(iv) The breach of contract and breach of warranty counterclaims against White should not be dismissed because all facts that may be considered by a court reviewing the issues provide sufficient notice in a notice pleading jurisdiction.**

Regardless of what counterclaimants must prove in order to recover on breach of contract and breach of warranty claims under Wisconsin law, to survive a motion to dismiss under federal pleading standards they must only provide White with fair notice of the claims. *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). As the Seventh Circuit put it: "Federal complaints plead claims rather than facts….It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary." *Kolupa v. Roselle Park District.,* 438 F.3d 713, 714 (7th Cir. 2006).

Without converting a motion to dismiss to one for summary judgment, a court may consider documents attached to the complaint as well as documents that are not attached to the complaint but attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiff's claim. See Fed. R. Civ. P. 10(b); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

White represented that he knew of no act or omission that would make the '943 unenforceable. White was aware then that certain prior art had not been disclosed to the USPTO. Counterclaimants identified one patent known to White and not cited by White to the USPTO that supports their misrepresentation claim to a sufficient extent to survive a Rule 12(b)(6) motion.. The rules of pleading and discovery contemplate situations just like this one: the counterclaims assert misrepresentation based on facts *not* disclosed. The ability to disclose facts is limited at this point. Discovery will provide more evidence, but the required notice and sufficient facts were given in the counterclaim to meet the

pleading requirement.

White made warranties that defied reasonable inference. A reasonable person would infer that a party asserting that he has the right to release a claim for infringement of a set of photographs that are protected by copyrights is the sole owner of the registered copyrights, and that if the same photographs have been included in another work, the party granting the release is the sole owner of that copyright registration as well. A reasonable person would infer that a named inventor on a patent who represents that he knows of no act or omission that would make the patent unenforceable implies that he disclosed all prior art known to him to the USPTO, as the law requires. A reasonable person would infer that if a party represents that a set of intellectual property rights has not been transferred, a release from the individual granting the release set forth in the Settlement Agreement would create a clear path for the released parties to proceed without risk of litigation from any third party.

Wisconsin courts have considered and discussed at length the circumstances under which a duty to disclose a material fact may arise in business transactions. *Ollerman v. O'Rourke Co.,* 94 Wis. 2d at 24-43. The usual rule is that there is no duty to disclose in an arm's length transaction. *Id.* at 29. However, courts have carved out a number of exceptions to that rule and have refused to apply it when to do so would work an injustice. *Id.* at 30. Determining whether there is a legal duty and the scope of that duty presents questions of law that require courts to make policy determinations. *Tietsworth*, 270 Wis.2d 146, ¶¶ 14-15, see also *Ollerman* 94 Wis. 2d at 27. The *Ollerman* decision noted that the type of interest protected by the law of misrepresentations in business transactions is "the interest in formulating business judgments without being

misled by others – that is, an interest in not being cheated." *Id.* at 29-30.

In considering the duty to disclose facts, the court in *Kaloti* considered that the Restatement (Second) of Torts, as well as several of the illustrations provided with it, have the following elements: 1) the non-disclosing party knew that the other party was not aware of the fact; (2) the mistaken party could not discover the fact by ordinary investigation or inspection, or he or she could not otherwise reasonably be expected to discover the fact; and (3) the mistaken party would not have entered into the transaction if he or she knew the fact. Restatement (Second) of Torts § 551 cmt. L (1977).

The court in *Kaloti* summarized the duty to disclose as follows:

A party to a business transaction has a duty to disclose a fact where:
(1) the fact is material to the transaction;
(2) the party with the knowledge of the fact knows that the other party is about to enter into the transaction under a mistake as to the fact;
(3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and
(4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact. *Kaloti*, at ¶21

That White had a duty of disclosure that he failed to meet may be illustrated by considering what might have transpired in the settlement negotiation for the first federal action if White had been forthcoming:

> White: I warrant that I have the right to release claims in this action and will happily do so for the $100,000.00 you will hand over to me and the $150,000.00 you will deliver to a trust account with my counsel. And, by the way, my wife is a co-claimant on a copyright that covers a text that includes the same photographs at issue in my copyright infringement claim in this case. She could sue you tomorrow morning without violating this agreement. And that '943 could be rather iffy. But feel free to go ahead with your business after you deliver the checks.
>
> Superspring Parties: What!?!?

White's promises were the stated consideration for the bargain for which Superspring parties would pay $250,000.00. By inducing assent with material misrepresentations White breached the contract or breached the warranties or the contract was never formed. To hold otherwise aligns incentives for fraud to a degree unsupportable by any policy argument and raises transactional costs for all parties trying to protect against unknowable deceit. In this case the consequence of fraudulent inducement is particularly egregious: a mulligan for White financed by his questionable settlement agreement, and an "intervening license" theory from which White attempts to take an end run around the bar to statutory damages set forth by the Copyright Act.

## CONCLUSION

Counterclaimants paid a quarter of a million dollars in a settlement that ended the first federal action and the state court action in Racine, in reliance on representations that doing so would leave them free to pursue business objectives with certain intellectual property rights secured. By not addressing the prior art that might risk the validity and enforceability of the '943 patent, but representing that White and his counsel knew of no act or omission that would make the patent unenforceable, White failed to disclose a material fact of such importance that White's misrepresentation amounted to fraudulent inducement. White has not alleged present ownership of any of his intellectual property and documents in evidence from Vector3Ortho in Nevada suggest that the intellectual property is owned by that entity. White's representation that he had authority to release the copyright infringement claims of the first federal action was false, as proven by the complaint of this action. Superspring and Marshall are left to wonder who else has rights

that White has not revealed, and what exactly they got for the $250,000.00. They certainly did not get the benefit of the bargain that was represented to them.

For purposes of this motion, for the reasons provided, White's motion to dismiss pursuant to Rule 12(b)(6) should be denied because White has not established that Counterclaimants failed to state a claim.