# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DR. VELTON C. WHITE and DONNA WHITE,

        Plaintiffs,

v.                                               Case No. 07-CV-892

MICHAEL C. MARSHALL,
SUPER SPRING ORTHODONTICS, LLC,
SPEEDALIGNERS, LLC,
NIGHTSHIFT, LLC, and
DANIEL L. BISHOP,

        Defendants.

_____

## ORDER

This matter is before the court on plaintiffs' motion for a default judgment and motion for a permanent injunction against defendants Super Spring Orthodontics, LLC ("Super Spring"), Speedaligners, LLC ("Speedaligners"), and Nightshift LLC ("Nightshift"). (Docket #125). This case arises out of a protracted dispute over the defendants' allegedly improper use of photographs of orthodontic patient progress taken by plaintiff, Dr. Velton C. White ("Dr. White"), that are the subject of fourteen copyright registrations. The plaintiffs contend that the copyright infringement committed by the three limited liability companies continued for more than three years in a variety of forms in total disregard of plaintiffs' rights.

## BACKGROUND

Dr. White, an orthodontist, has made a patented orthodontic device that uses springs. Dr. White offers the orthodontic device for sale and use in his own practice.

In order to demonstrate the effectiveness of his orthodontic device, Dr. White took "before" and "after" photographs of his patients, and he uses these photographs in promotional materials. White has obtained federal copyright registration for these photographs. Defendant Michael C. Marshall ("Marshall") assisted Dr. White in promoting the orthodontic devices. In 2004, Marshall, Nancy Phillips ("Phillips"), and defendant Daniel Bishop ("Bishop") formed defendant Super Spring, a company that provides orthodontic devices and services. Dr. White alleges that Super Spring launched a promotional website, www.speedaligners.com, which, according to plaintiff, displays his copyrighted "before" and "after" patient photographs. Dr. White also alleges that defendant Speedaligners, a company created by Phillips, Marshall, and Bishop to hold intellectual property, identifies the content of that website as its copyrighted property.

In 2004, Phillips filed a lawsuit against Dr. White, her father, for having been wrongfully omitted as an inventor of the patented orthodontic device, and Dr. White counterclaimed against Phillips, Super Spring, and Marshall alleging infringement of the patent, infringement of Dr. White's copyrighted photographs, and unfair competition. That case was resolved after the parties reached a settlement agreement in June 2006. Pursuant to the parties' agreement, in exchange for monetary compensation of $250,000, Dr. White granted a license to Super Spring to use the patented orthodontic device and to use the copyrighted patient photographs that are the subject of this action. The license to use the photographs extended through June 30, 2007. In this case, Dr. White alleged that the defendants

continued to display his copyrighted photographs on www.speedaligners.com after the license had expired, even as late as December 21, 2010. The plaintiffs have now moved the court to enter a default judgment and to issue a permanent injunction against defendants Super Spring, Speedaligners, and Nightshift. For the reasons set forth below, the court will grant both requests.

## DISCUSSION

**I.    Default Judgment**

Under Fed. R. Civ. P. 55, the court may enter a default judgment when a party against whom affirmative relief is sought fails to plead or otherwise defend. The decision to enter default judgment lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (citation omitted). As a general rule, a "default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint." *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982). Upon entry of default, the court takes all well-pleaded allegations in plaintiffs' complaint relating to liability as true. *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995).

The clerk has already entered, on April 6, 2010, defendant Nightshift's default pursuant to an April 1, 2010 Order. (Docket #97). The court now finds it appropriate to enter default judgments against defendants Super Spring and Speedaligners pursuant to Fed. R. Civ. P. 55, as both have failed to plead or otherwise defend in

this lawsuit. Both defendants were served with an amended complaint on October 1, 2009. (Docket #57).[1] However, despite an express directive from the court to file a responsive pleading no later than May 1, 2010, which included a warning of default judgment if the defendants failed to do so, Super Spring and Speedaligners took no such action.

To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). A certificate of copyright registration provides a prima facie presumption of validity. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). Based on the allegations contained in the amended complaint, the court finds that the plaintiffs owned the registered copyrights in a series of photographs showing the treatment progress of Dr. White's patients using Dr. White's removable orthodontic appliance. Furthermore, the court finds that the LLC defendants infringed the plaintiffs' registered copyrights by the unauthorized reproduction, distribution, and display of the photographs that are the

---

[1] Defendants Super Spring and Speedaligners (along with individual defendant Marshall) filed a motion to dismiss (Docket #9) the original complaint on December 12, 2007. After that motion was denied on March 27, 2008 (Docket #17), Super Spring and Speedaligners moved for and obtained an extension of time to answer the complaint, and then filed an answer and counterclaim (Docket #30) on February 19, 2009, and an amended answer and counterclaim (Docket #31) on February 27, 2009. Super Spring and Speedaligners were both served with the amended complaint. (Docket #57). The defendants then filed another motion to dismiss on October 21, 2009. (Docket #65). This motion was also denied by the court. (Docket #78). Following the denial of their motion to dismiss, Super Spring and Speedaligners failed to file an answer and failed to timely respond to discovery or appear for depositions, which prompted the plaintiffs to file a motion to compel. (Docket #90). The court granted this motion and, at the same time, directed the defendants to file answers to the amended complaint within 30 days or risk default judgment. (Docket #97).

subject of plaintiffs' copyrights or derivatives thereof. Accordingly, the allegations of the amended complaint, taken as true, establish that Super Spring, Speedaligners, and Nightshift have infringed copyrights owned by the plaintiffs.

## II.     Statutory Damages

A copyright owner may choose to recover one of two different forms of relief against an infringer. First, the owner may recover actual damages and lost profits that are attributable to the infringement. *See* 17 U.S.C. § 504(b). However, because these damages are often virtually impossible to prove, a copyright owner may elect instead to recover statutory damages. *See* 17 U.S.C. § 504(c). Under § 504(c), the court has the discretion to award damages in the amount of $750 to $30,000 per infringement. Moreover, if the court concludes that willful infringement occurred, it may increase the amount awarded up to a sum of $150,000 per infringement. *See* 17 U.S.C. § 504(c)(1)-(2).

In awarding statutory damages, the court is not required to follow any rigid formula. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Instead, the court enjoys wide discretion in setting a statutory damage award within the prescribed range. *Broadcast Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 489 (7th Cir. 1995). The court may consider various factors such as "'the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement.'" *Chi-Boy Music*, 930 F.2d at 1229 (quoting *F.E.L. Publications v. Catholic Bishop of Chicago,* 754 F.2d 216, 219 (7th Cir. 1985) (citations omitted)). Moreover, "when the

infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations." *Id.* (citing *Illinois Bell Tel. Co. v. Haines & Co.,* 905 F.2d 1081, 1089 (7th Cir. 1990).

Furthermore, a finding of willfulness is justified "if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991). "[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness...." *Chi-Boy Music*, 930 F.2d at 1227. Additionally, statutory damages have been held to be appropriate on a motion for default judgment because the defaulting party has the information needed to prove actual damages. *Wondie v. Mekuria*, 2010 WL 3893587, *4 (D.D.C. Oct. 4, 2010); *Lifted Research Grp., Inc. v. Behdad, Inc.*, 591 F.Supp.2d 3, 8 (D.D.C. 2008).

In this case, due to the default and lack of response of Super Spring, Speedaligners, and Nightshift, there is no evidence available of the sales volume or revenue from sales of their removable appliances comparable to Dr. White's removable appliances. Therefore, it is difficult, if not impossible, to determine the profits reaped and expenses saved by the defendants as well as the revenues lost by the plaintiff. Though the court is unable to compute actual damages, the record before the court provides some guidance as to what an appropriate monetary award should be under the statute. First, as part of a settlement agreement in another lawsuit, Dr. White was paid $250,000 for a bundle of rights that included a one year

use of the copyrighted photographs. (White Decl. Ex. O, ¶3-5) (Docket #3-9).[2] Second, it appears that the photographs are of substantial commercial value. The photos were featured prominently in the marketing materials of the defaulting defendants to demonstrate the effectiveness of their removable appliances. (Roberts Decl., Ex. A at VF0390) (Docket #136-1). Furthermore, the defaulting defendants continued and expanded the use of the photographs after the filing of the present lawsuit. It is reasonable to infer that such continued use demonstrates that defendants likely found the risk of liability for copyright infringement to be less than the commercial benefits flowing from use of the photographs. In fact, the specific photographs copyrighted by Dr. White appear to hold individualized commercial value. For example, results from use of the orthodontic devices can be seen within three to four months. Therefore, the defendants had ample opportunity to create their own "before and after" photographs in the course of this three-year litigation, yet they still chose to use Dr. White's copyrighted ones.

The plaintiffs have also offered evidence that Super Spring agreed that $500 per day was a reasonable sum for liquidated damages for specified violations of a separation agreement entered into by Phillips, Marshall, and Bishop.[3] Specifically, the agreement stipulates $500 per day liquidated damages for the use of any of the

---

[2] The bundle of rights allowed for the use of the copyrighted photographs for one year and the use of one of Dr. White's patents for an indeterminate amount of time. (*Id.*).

[3] This separation agreement was entered into when Phillips decided she wanted to extricate herself from a business relationship with Marshall and Bishop and the Super Spring and Speedaligners LLCs.

-7-

telephone numbers designated in the agreement as belonging to Phillips or if Super Spring were to make orthodontic appliances, contact or otherwise do business with any doctor or client that had previously done business with Phillips, her company, or Super Spring. (Nancy White Decl., Ex. A at VF0356, ¶¶13, 20) (Docket #137). Though neither of the liquidated damages provisions addresses the use of patient photos, they do reflect that the parties to the agreement acknowledged that $500 per day was a reasonable amount to compensate a party for a violation of the agreement by the use of its commercial assets when the value of such use did not lend itself to simple quantification. The plaintiffs urge the court to apply the $500 per day liquidated damages amount to the period of time the defendants used plaintiffs' photographs without authorization – July 1, 2007, through December 21, 2010. Applying the $500 per day liquidated damages to that period – 1,269 days – results in a total of $634,500. Accordingly, plaintiffs request an award of no less than $630,000.

Taking into account all of the factors discussed above, the court finds it appropriate to award plaintiffs $10,000 for each of the fourteen works infringed. The court concludes that awarding the full statutory amount for each copyrighted work would be improper because the commercial value of the photographs stems from their combined use as "before and after" pictures. Also, the license agreement between Dr. White and Marshall, Bishop, and Phillips, while somewhat helpful in determining the monetary value assigned by the parties to the photographs, is not an ideal guideline because the $250,000 received by Dr. White was in exchange for

not only use of the photographs for one year, but also for use of one of his patents for an indefinite period. Thus, it would appear that the license of the patent and its unlimited time frame, hold more value than the photographs themselves, which have no value independent of a patented orthodontic device. On the other hand, the photographs hold significant marketing value, confirmed by the defendants' continued use of the photographs as marketing material even though they faced costly litigation in this court for copyright infringement.

Additionally, the court finds it is proper to enhance the award by $10,000 for each work infringed because the defendants engaged in willful infringement. The record contains ample evidence of willful infringement. The defendants entered into a licensing agreement covering their use of the photographs which expired in June of 2007. As previously noted, notice accorded to an alleged infringer before the acts of infringement occurred is "perhaps the most persuasive evidence of willfulness." *Chi-Boy Music*, 930 F.2d at 1227. Thus, the continued use of the copyrighted photos for more than three years after the license expired is without a doubt willful infringement. *See Schmitt v. VAG Group, Inc.,* 2010 WL 331782 (D. Or. 2010) (defendant who continued to display plaintiff's copyrighted photos on website to promote apparel sales for months after license to utilize the photos expired willfully infringed). Therefore, the court awards plaintiffs $20,000 per photograph infringed, inclusive of an enhancement for defendants' willful infringement, for a total of $280,000 in statutory damages.

## III. Injunctive Relief

In addition to their motion for default judgment as to the LLC defendants, the plaintiffs have also requested the court to issue a permanent injunction. The Copyright Act allows a court to enter injunctive relief when it deems it reasonable to prevent future copyright infringement. 17 U.S.C. § 502(a). Moreover, a plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Additionally, there is a presumption in copyright cases that copyright infringement constitutes irreparable injury. *Atari, Inc. v. Phillips Consumer Elec. Corp.,* 672 F.2d 607, 620 (7th Cir. 1982).

Here, even despite the presumption, there is no question that the plaintiffs have suffered irreparable injury and that monetary damages are inadequate to compensate for the injury. The plaintiffs correctly note that they have suffered harm as demonstrated by the court's entering of default judgment in their favor. They also continue to suffer harm as the defendants have persisted in displaying the infringing photographs on their websites throughout this three year dispute. Such blatant disregard for the allegations of infringement against the defendants demonstrates that copyright infringement is likely to continue unless enjoined. *See Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F.Supp.2d 782, 785 (E.D. Tex. 2006) (noting

that defendant's continued use of plaintiffs' musical recordings demonstrates that threat of suit or statutory damages was not an effective deterrent); *see also Virgin Records America, Inc. v. Johnson*, 441 F.Supp.2d 963, 966 (N.D. Ind. 2006) ("Defendant's failure to respond to the complaint likely suggests Defendant does not take seriously the illegality of the infringing activity."). Plaintiffs also stress, and the court agrees, that there is a strong likelihood they will not be able to enforce any potential monetary judgment against the three LLC defendants due to their apparent lack of any business assets. *See Yash Raj Films (USA), Inc. v. Sidhu*, 2010 WL 1032792 (E.D. Cal. 2010) (finding that monetary damages were inadequate to compensate plaintiff for the injury suffered because defendant's financial condition made it doubtful that defendant would ever be able to adequately pay any substantial amount of statutory damages). Accordingly, the court finds that the plaintiffs have suffered irreparable injury and that monetary damages are inadequate to compensate for that injury.

Furthermore, the court finds that it is not a burden on defendants to follow the law and stop their unauthorized use of the plaintiffs' photographs. The injunction will not bar the companies from conducting their businesses, including the selling of competing orthodontic appliances. Finally, the public interest is advanced by enforcing compliance with the copyright laws. *See Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir. 1994) ("[g]enerally, public policy favors the issuance of permanent injunctive relief in cases of infringement of intellectual property rights."). Accordingly, the plaintiff is entitled to injunctive relief

and, thus, the court will issue a permanent injunction against defendants Super Spring, Speedaligners, and Nightshift.

## IV. Attorney's Fees

The plaintiffs also assert they are entitled to an award of their costs, including reasonable attorney's fees pursuant to 17 U.S.C. § 505. Though the award of attorney's fees is within the sound discretion of the district court, the prevailing party in copyright litigation "is presumptively entitled to an award of fees under § 505." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). Moreover, a finding of willful infringement will support an award of fees. *Chi-Boy Music*, 930 F.2d at 1227. In this case, the defendants' willful infringement of the copyright laws warrants an award of fees. Additionally, though the court's award of statutory damages is sizable, an award of attorney's fees is still proper because the court's aim is to deter future infringement both in general and by the defendants.

After consideration of the plaintiffs' submissions concerning attorney's fees, the court will grant plaintiffs' requested costs and attorney's fees totaling $55,582.25. Though it is true that "hours spent reviewing records, talking to other lawyers or experts, preparing legal documents, etc., cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed," *Coulter v. Tennessee,* 805 F.2d 146, 150 (6th Cir. 1986), the court finds there is a substantial basis for crediting the accuracy of the time records submitted by the plaintiffs. Though the court has previously noted that this is a case in which the proverbial train was never properly on track (Order 1) (Docket #97), in

the end, the fee request is for services rendered in the prosecution of copyright infringement claims against three LLC defendants over a period of approximately three years, with the ultimate conclusion that the LLC defendants willfully infringed the plaintiffs' copyrights. The docket sheet reflects 140 entries and numerous substantive motions. It is not for the court to engage in an ex post facto determination of whether attorney hours were necessary to the relief obtained. Rather the court must determine whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. The court concludes that under the facts of this case, the time expended by plaintiffs' counsel was reasonable. Moreover, the court finds that the requested fees are commercially reasonable and that plaintiffs' counsel made appropriate adjustments to the hours worked to reflect the commingling of work done for both the limited liability companies and the individual defendants.[4] Lastly, even though Nightshift joined the lawsuit later than both Super Spring and Speedaligners, because so many of the issues against the three defendants were the same or similar, the court finds it reasonable to impose fees and damages jointly and severally, rather than apportioned among the defendants.

Accordingly,

---

[4] The court notes that a consented to motion for attorney's fees filed on April 30, 2010 (Docket #100) is reflected in the current award of fees as to the limited liability defendants and, therefore, the court will deny that motion as moot. As that motion pertains to individual defendant Marshall, the court will leave it to the parties to determine how to proceed.

**IT IS ORDERED** that plaintiff's motion for a permanent injunction and default judgment (Docket # 125) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiffs' motion to amend/correct the scheduling order (Docket #99) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that plaintiffs' motion for attorney's fees pursuant to Fed. R. Civ. P 37 (Docket #100) be and the same is hereby **DENIED** as moot; and

**IT IS FURTHER ORDERED** that:

1. Nightshift LLC, Super Spring Orthodontics, LLC and Speedaligners, LLC and their officers, agents, servants, employees and/or representatives and all other persons in active concert or participation with them, shall be and hereby are permanently enjoined from continued infringement of Copyright Reg. Nos. VA 1-277-047, VA 1-277-063, VA 1-277-064, VA 1-277-065, VA 1-278-589, VA 1-279-084, VA 1-279-086, VA 1-279-087, VA 1-279-088, VA 1-279-090, and TX 6-369-883 and more specifically from the reproduction, display, distribution, or creation of works derived from any of the works that are the subject of the identified copyright registrations;

2. Nightshift, LLC, Super Spring Orthodontics, LLC and Speedaligners, LLC shall take immediate action to remove copies of any of the images that are the subject of the identified copyright registrations identified in Paragraph 1 or images derived therefrom from the website with the URL http://www.nightshiftortho.com and any other location, physical or internet-based where they are displayed;

3. Nightshift, LLC, Super Spring Orthodontics, LLC and Speedaligners, LLC shall surrender to plaintiffs all printed matter that contains copies of any of the images that are the subject of the identified copyright registrations identified in Paragraph 1 or images derived therefrom;

4. Defendants Nightshift, LLC, Super Spring Orthodontics, LLC and Speedaligners, LLC shall pay, jointly and severally, the plaintiffs **$280,000** in statutory damages pursuant to 17 U.S.C. § 504(c).

5. Defendants Nightshift, LLC, Super Spring Orthodontics, LLC and Speedaligners, LLC shall pay, jointly and severally, plaintiffs' attorney's fees and costs in the amount of **$55,582.25** pursuant to 17 U.S.C. § 505.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge